Azar Mouzari, SBN 263461
Nilofar Nouri, SBN 311871
**BEVERLY HILLS TRIAL ATTORNEYS, P.C.**
9350 Wilshire Blvd., Suite 203
Beverly Hills, California 90212
Tel:  310-858-5567  Fax: 310-627-8642
Email: azar@bhtrialattorneys.com
Email: nilofar@bhtrialattorneys.com

Attorneys for Plaintiff and the Proposed Class

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL VAIL, an individual, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>G.B.T. Inc., a California Corporation, and DOES 1 through 10 inclusive,<br><br>Defendants. | Case No.:  2:24-cv-10574-MAR<br><br>[Assigned to the Hon. Margo A. Rocconi]<br><br>**PLAINTIFF MICHAEL VAIL'S NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*[Declaration of Michael Vail, Declaration of Azar Mouzari and [Proposed] Order Filed Concurrently Herewith]*<br><br>Hearing Date: September 17, 2025<br>Hearing Time: 11:00 a.m.<br>Courtroom: 790<br><br>Action Filed: December 9, 2024<br><br>**CLASS ACTION** |

1

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on September 17, 2025 at 11:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Margo A. Rocconi, located at 255 E. Temple St., California 90012, Courtroom 790, Plaintiff Michael Vail hereby moves for default judgment against Defendant G.B.T. Inc.

This Motion is made pursuant to Federal Rule of Civil Procedure 55(b)(2) on the grounds that default judgment is appropriate under the standards articulated in *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). Each of the *McCool* factors weighs in favor of default judgment here, and the remedies requested by Plaintiff are reasonable.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declarations of Azar Mouzari and Michael Vail, the pleadings and papers on file in this action, and on such oral argument and other matters as the Court may properly consider at the time of the hearing of this Motion.

DATED: July 25, 2025          **BEVERLY HILLS TRIAL ATTORNEYS, P.C.**

                              */s/ Azar Mouzari*
                              Azar Mouzari, Esq.
                              Nilofar Nouri, Esq.

# **TABLE OF CONTENTS**

I.      INTRODUCTION……………………………………………………..6

II.     FACTUAL BACKGROUND…………………………………………7

III.    LEGAL STANDARD………………………………………………10

IV.     ARGUMENT………………………………………………………...12

   A. Plaintiff Has Complied with Fed. R. Civ. P. 55(A), 54(C), And Local
       Rules 55–1 and 55–2……………………………………………………12

   B. The Eitel Factors Support Granting Default Judgment Against Defendant….13

   C. Remedies…………………………………………………………...19

V.      CONCLUSION……………………………………………………24

*PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT*

# TABLE OF AUTHORITIES

**Cases**                                              **Page(s)**

*Broughton v. Cigna Healthplans*
   21 Cal.4th 1066 (1999)………………………………………………….………..21

*Chapman v. Skype Inc.*
   220 Cal.App.4th 217 (2013)………………………………………………….…15

*Cripps v. Life Ins. Co. of N. America*
   980 F.2d 1261 (9th Cir. 1992)………………………………………………….11

*Discovery Communications, Inc. v. Animal Planet, Inc.*
   172 F.Supp.2d 1282 (C.D. Cal. 2001)……………………………………….…...11

*Eitel v. McCool*
   782 F.2d 1470 (9th Cir. 1986)…………………………………………...…..*passim*

*Graciano v. Robinson Ford Sales, Inc.*
   50 Cal.Rptr.3d 273 (2006)………………………………………………….…23

*Greyhound Exhibitgroup, Inc. v. E.L.U.L Realty Corp.*
   973 F.2d 155 (2d Cir. 1992)………………………………………………….…11

*Hawaii Carpenters' Trust Funds v. Stone*
   794 F.2d 508 (9th Cir. 1986)………………………………………………….…13

*Ketchum v. Moses*
   24 Cal.4th 1122, 1131-32 (2001)…………………………………………….22

*Landstar Ranger, Inc. v. Parth Enters.*
   725 F.Supp.2d 916 (C.D. Cal. 2010)………………………………………….13

*Lavie v. Procter & Gamble Co.*
   105 Cal.App.4th 496 (2003)………………………………………………..20

*McGill v. Citibank, N.A.*
   2 Cal.5th 945 (2017)………………………………………………………….…21

*Mullane v. Central Hanover Bank & Trust Co.*
   339 U.S. 306 (1950)……………………………………………………….19

*PepsiCo Inc. v. Cal. Sec. Cans*
  238 F.Supp.2d 1172 (C.D. Cal. 2002)……………………………………*passim*

*PepsiCo v. Triunfo–Mex, Inc.*
  189 F.R.D. 431 (C.D. Cal. 1999)…………………………………………..11

*Serrano v. Priest*
  20 Cal.3d 25 (1977)………………………………………………………..22

*TeleVideo Sys., Inc. v. Heidenthal*
  826 F.2d 915 (9th Cir. 1987)……………………………………10-11, 18

*Thompson v. 10,000 RV Sales, Inc.*
  130 Cal.App.4th 950 (2005)………………………………………………20

*Williams v. Gerber Prod. Co.*
  552 F.3d 934 (9th Cir. 2008)……………………………………………15

*Wu v. Ip*
  No. C93–4467 FMS, 1996 WL 428342 at *1 (N.D. Cal. 1996)………...………11

**Statutes**

15 U.S.C. § 2301……………………………………………………………16

15 U.S.C. § 2302……………………………………………………………17

California Civil Code § 1770………………………………………………..15

California Civil Code § 1780…………………………………………….20, 22

California Civil Code § 1792…………………………………………...…16

California Code of Civil Procedure § 1021.5………………………………..23

California Commercial Code § 2313………………………………………14

California Commercial Code § 2314………………………………………15

Federal Rule of Civil Procedure 12(a)(1)(i)……………………………..…….9

Federal Rule of Civil Procedure 54…………………………………,,,,……11-13, 19

Federal Rule of Civil Procedure 55……………………………………...*passim*

*PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT*

## I.    INTRODUCTION

This case arises from the deceptive and unlawful warranty practices of G.B.T. Inc. ("Defendant" or "Gigabyte"), a multinational electronics company known for manufacturing and selling computer hardware components, including motherboards, graphics cards, and other essential computer parts. Plaintiff Michael Vail ("Plaintiff"), individually and on behalf of similarly situated consumers, brought this action to redress Defendant's unlawful scheme to deny valid warranty claims using pretextual justifications and misleading representations. Plaintiff alleges in the Complaint that Gigabyte systematically mischaracterized product defects as "physical damage" in order to avoid honoring its express and implied warranty obligations. By doing so, Defendant deprived consumers of remedies they were entitled to under state and federal law, including California's consumer protection statutes and the Magnuson-Moss Warranty Act.

Indeed, Gigabyte's warranty terms contain language that the Federal Trade Commission ("FTC") recently flagged as problematic under federal law. Indeed, the FTC warned Defendant in a letter dated July 3, 2024 that Defendant's warranty includes language that unlawfully conditions warranty coverage on the use of specific services or products, which the Magnuson-Moss Warranty Act expressly prohibits unless a waiver is obtained. Such provisions mislead consumers into believing they must rely on authorized Gigabyte parts and services to retain their warranty protection, which is a violation of federal law. As the FTC noted, "warranty language that implies to a customer acting reasonably under the circumstances that warranty coverage requires the consumer to purchase an article or service identified by brand, trade or corporate name is deceptive and

*PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT*

prohibited." Defendant was warned by the FTC that this practice not only undermines consumers' rights but also harms competition by restricting the right to repair, an issue that the FTC specifically addressed.

Despite being properly served with a Notice Letter followed by Plaintiff's Class-Action Complaint, Defendant has failed to respond to both the letter and the subsequent Complaint that was filed against it. As such, a Request for Entry of Default was filed by Plaintiff (Dkt. 9), and the Clerk entered default on or about February 12, 2025. (Dkt. 10). Because Defendant has abandoned its opportunity to participate in this litigation, the well-pleaded allegations of the Complaint are deemed admitted, and Plaintiff is entitled to judgment. As explained below, all relevant factors under *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986) support entry of default judgment, and Plaintiff respectfully requests that the Court grant this Motion and enter judgment against G.B.T. Inc. in the amount of $48,165.19.

## II.    FACTUAL BACKGROUND

Plaintiff Michael Vail has purchased approximately 250-300 of Gigabyte's motherboards for computers that he has built for his clients over the past fifteen (15) years. On multiple separate occasions, after experiencing hardware failures with the motherboards he purchased, Plaintiff attempted to invoke Defendant's warranty. Despite his compliance with all warranty terms, including proper product use, Gigabyte refused to honor the warranty claims. Indeed, each time, Defendant asserted that the failures were due to "physical damage," even though the damage in question was not caused by Plaintiff and this justification was unfounded and inconsistent with the products' condition.

Indeed, Gigabyte failed to provide any legitimate basis for rejecting the warranty claims, acting in direct contravention of both the warranty terms and federal and state consumer protection laws.

In his Complaint, Plaintiff alleges that this was not an isolated incident. Instead, Gigabyte has implemented a company-wide policy of routinely denying warranty claims based on unsubstantiated claims of customer damage, regardless of the actual condition of the returned product. Plaintiff and others similarly situated were induced to purchase Gigabyte products based on representations about quality and warranty protections. In practice, however, Gigabyte failed to live up to its commitments, using a standard playbook of denying claims under the guise of physical damage or unauthorized use.

In addition, Defendant conditions warranty eligibility on exclusive use of Gigabyte-authorized service providers or proprietary components, contrary to federal regulations. As a result, consumers who used compatible but non-Gigabyte parts or sought third-party service were automatically disqualified from warranty relief, regardless of the defect's nature. The FTC has specifically noted that such language is deceptive, as it suggests to consumers that warranty protection requires the exclusive use of Gigabyte-authorized parts and services, which violates federal law. By enforcing these restrictive and misleading warranty terms, Gigabyte misleads consumers into believing they must rely solely on Gigabyte-authorized parts and services to maintain warranty eligibility. This policy not only infringes on consumers' rights under federal warranty laws but also harms market competition by limiting the right to repair. The right-to-repair movement,

endorsed by the FTC, aims to allow consumers to maintain and repair their products freely without fear of voiding warranty coverage.

Following a Notice Letter that was mailed to Defendant's headquarters in California on October 18, 2024, and given that no response or communications were received from Defendant, Plaintiff filed this class action on December 9, 2024, asserting claims for breach of express and implied warranties, violation of the Magnuson-Moss Warranty Act, violation of the Song-Beverly Consumer Warranty Act, unfair competition, deceptive advertising under the CLRA, and unjust enrichment, and seeking damages, restitution, injunctive relief, and attorneys' fees. Declaration of Azar Mouzari ("Mouzari Decl."), ¶4, Exhibits A. On December 20, 2024, Plaintiff served Defendant with the Summons and Complaint by substituted service by leaving copies of with a "John Doe" (refused name), agent in charge and authorized to accept service for Defendant, at 17358 Railroad St., City of Industry, CA 91748-1023. Mouzari Decl., ¶5, Exhibit B; Dkt. 7. Defendant did not file an answer or otherwise file a responsive pleading to the Complaint, although such response was due no later than January 10, 2025 under Federal Rule of Civil Procedure 12(a)(1)(i). Mouzari Decl., ¶6.

Thereafter, on February 11, 2025, Plaintiff filed a Request for Entry of Default Against Defendant, which was served by U.S. Mail on Defendant's agent's address. Mouzari Decl., ¶7. The Court Clerk entered default on or about February 12, 2025. *Id.*; (Dkt. 10). Defendant has knowingly refused to respond to the Court's Summons and has failed to participate in this action in any way, necessitating the filing of this Motion. Mouzari Decl., ¶8.

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure 55(b) provides for a court ordered default judgment following entry of default by the court clerk under Rule 55(a). The FRCP and the local rules in the Central District of California require that applications for default judgment set forth the following information: (1) when and against which party default was entered; (2) the identification of the pleadings to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is adequately represented; (4) that the Soldiers' and Sailors' Civil Relief Act of 1940 does not apply; and (5) that notice of the application has been served on the defaulting party, if required. Fed. R. Civ. P. 55(b)(2); C.D. Cal. L.R. 55–1.

Under Rule 55(b), a court may order default judgment following the entry of default by the Clerk of the Court.  After default has been entered, the factual allegations of the complaint are taken as true, except for those allegations relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987). Entry of default judgment is completely at the discretion of the trial court.  *Eitel v. McCool*, *supra*, 782 F.2d at 1471 (9th Cir. 1986). In determining whether default judgment is appropriate, courts utilize the following *Eitel* factors: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Id.* at 1471.

"In applying this discretionary standard, default judgments are more often granted than denied." *PepsiCo v. Triunfo–Mex, Inc*., 189 F.R.D. 431, 432 (C.D. Cal. 1999).

A party seeking a default judgment must state a claim upon which it may recover. *PepsiCo Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172 (C.D. Cal. 2002). After a default has been entered by the court clerk, the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, *supra*, 826 F.2d at 917; *Discovery Communications, Inc. v. Animal Planet, Inc.*, 172 F.Supp.2d 1282, 1288 (C.D. Cal. 2001). Plaintiff is required to prove all damages sought in the complaint. In addition, "[a] judgment by default shall not be different in kind [or] exceed in amount that prayed for in the [complaint]." Fed. R. Civ. P. 54(c). In determining damages, a court can rely on the declarations submitted by the plaintiff or order a full evidentiary hearing. Fed. R. Civ. P. 55(b)(2).

Finally, Plaintiff's burden in "proving up" damages is relatively lenient. If proximate cause is properly alleged in the complaint, it is admitted upon default. *Greyhound Exhibitgroup, Inc. v. E.L.U.L Realty Corp*., 973 F.2d 155, 159 (2d Cir. 1992). Injury is established and plaintiff need prove only that the compensation sought relates to the damages that naturally flow from the injuries pled. *Wu v. Ip*, No. C93–4467 FMS, 1996 WL 428342 at *1 (N.D. Cal. 1996) (citing *Greyhound Exhibitgroup, Inc*., 973 F.2d at 159). However, if the facts necessary to determine damages are not contained in the complaint, or are legally insufficient, they will not be established by default. *See Cripps v. Life Ins. Co. of N. America*, 980 F.2d 1261, 1267 (9th Cir. 1992).

11

## IV.    ARGUMENT

### A.    Plaintiff Has Complied with Fed. R. Civ. P. 55(A), 54(C), And Local Rules 55–1 and 55–2

Under Local Rule 55-1, when a plaintiff applies to the Court for default judgment, "the application shall be accompanied by a declaration in compliance with Fed. R. Civ. P. 55(b)(1) and/or (2) and include the following:

(a) When and against what party the default was entered;

(b) The identification of the pleading to which default was entered;

(c) Whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator or other representative;

(d) That the Servicemembers Civil Relief Act (50 U.S.C. App. § 521) does not apply; and

(e) That notice has been served on the defaulting party, if required by Fed. R. Civ. P. 55(b)(2)."

*See* Civ. L.R. 55-1.

Here, Rule 55(b)(2) applies because Plaintiff is applying to the Court (instead of the Clerk) for default judgment. *See* Fed. R. Civ. P. 55(b)(2). In addition, Plaintiff's Motion is accompanied by a declaration stating that a) the Court's Clerk entered default against Defendant Gigabyte on February 12, 2025. Mouzari Decl., ¶7; (Dkt. 10); b) Default was entered on Plaintiff's Complaint; *Id*. c) the defaulting party, Gigabyte, is not an infant or an incompetent person. Mouzari Decl., ¶9;  d) Gigabyte is not exempted from

default under the Servicemembers Civil Relief Act; *Id.* and e) notice of this Motion and a copy of this Motion has been served on Defendant by U.S. Mail, at the address of its agent as reflected on the Secretary of State's website. *See* Mouzari Decl., ¶10.

Moreover, Plaintiff is submitting calculations regarding the amount of attorneys' fees and costs incurred pursuant to Local Rule 55–3. Finally, because Plaintiff does not request relief that differs from or exceeds that prayed for in the Complaint, the application for default judgment complies with Fed. R. Civ. P. 54(c). Accordingly, the Court need only analyze the *Eitel* factors to determine whether default judgment is appropriate.

**B. The Eitel Factors Support Granting Default Judgment Against Defendant**

1. Possibility Of Prejudice To Plaintiff

Denying default judgment here would leave Plaintiff without a proper remedy. *See Pepsico, Inc. v. Cal. Sec. Cans*, *supra*, 238 F.Supp.2d at 1177 (stating plaintiffs would have no other recourse for recovery if default judgment was not granted). Because Defendant ignored the Complaint, Plaintiff has no other means to collect compensation from Defendant and to prevent Gigabyte from continuing its unlawful practices unless he obtains a default judgment in his favor. Simply, Plaintiff will be left without a proper remedy absent default judgment. *See, e.g., Landstar Ranger, Inc. v. Parth Enters.*, 725 F.Supp.2d 916, 920 (C.D. Cal. 2010) ("Since the facts in the complaint are deemed true, the court concludes that plaintiff would suffer prejudice if a default judgment were not entered.") (internal citation omitted). Accordingly, this factor favors granting default judgment.

2. Substantive Merits And Sufficiency Of The Complaint

---

The second Eitel factor "require[s] that a plaintiff state a claim on which the [plaintiff] may recover." *Cal. Sec. Cans*, 238 F.Supp.2d at 1175 (citations and quotations omitted). In order to weigh these two factors, the Court must review Plaintiff's claims.

a. Plaintiffs' State Law Claims

Plaintiffs pled six state law causes of action: breach of express warranty, breach of implied warranty of merchantability, violations of the UCL and CLRA, breach of implied warranty in violation of the Song-Beverly Consumer Warranty Act, and unjust enrichment.

(1) Plaintiff's Breach of Express and Implied Warranty

Plaintiff alleges that Gigabyte expressly warranted its products—including computer motherboards—against defects in materials and workmanship. Plaintiff purchased these products and experienced hardware failures during the warranty period. Despite Plaintiff's compliance with all applicable terms, including proper product use and adherence to claim procedures, Defendant repeatedly denied valid warranty claims based on unsubstantiated assertions of "physical damage." Plaintiffs allege that these denials breached Defendant's written warranty obligations. These facts state a valid claim for breach of express warranty under California law. *See* Cal. Com. Code § 2313.

Plaintiff also alleges that the products at issue were not fit for the ordinary purposes for which such products are used. G.B.T. Inc. marketed and sold its motherboards for use in personal computers, but multiple failures occurred during normal operation, resulting in product malfunction and financial harm. The products were therefore not of merchantable quality, in violation of the implied warranty. *See* Cal. Com. Code § 2314.

(2) Plaintiff's UCL and CLRA Claims

Whether a representation is 'fraudulent' or 'misleading' under the UCL and CLRA is governed by the same legal standard: whether a "reasonable consumer" is "likely to be deceived." *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *Chapman v. Skype Inc.*, 220 Cal.App.4th 217, 230 (2013).

In this case, Plaintiffs allege that Defendant's conduct constitutes unlawful, unfair, and fraudulent business practices under the UCL and CLRA. This includes: (1) denying warranty claims without factual basis; (2) employing misleading warranty terms that suggest warranty coverage is voided if a product sticker is removed; and (3) failing to disclose the limitations of its warranty coverage at the point of sale. Plaintiff has sufficiently alleged that Defendant's conduct is likely to deceive reasonable consumers and has caused actual economic injury. Moreover, Plaintiff has alleged in the Complaint that Defendant engaged in deceptive practices in connection with the sale of consumer goods, including misrepresenting the standard and quality of its products and falsely advertising warranty protections that were not honored in practice. These acts violate several provisions of Cal. Civ. Code § 1770, including §§ 1770(a)(5), (7), and (9). Plaintiff complied with the CLRA's notice and cure provisions by sending a detailed demand letter more than 30 days prior to initiating suit. Accordingly, he has stated a claim for both injunctive and monetary relief under the CLRA as well.

(3) Breach of Implied Warranty Under the Song-Beverly Consumer
Warranty Act

---

Plaintiff also asserts a claim under the Song-Beverly Act, which supplements general warranty law by requiring that consumer goods sold in California be accompanied by an implied warranty of merchantability. Defendant, as the manufacturer and seller of consumer goods in California, failed to ensure that the products were fit for ordinary use and free from significant defects during the warranty period. This failure constitutes a violation of Cal. Civ. Code § 1792.

(4) Unjust Enrichment

Finally, Plaintiff alleges that Defendant Gigabyte unjustly retained money paid by consumers who reasonably relied on representations about product reliability and warranty coverage. Defendant's refusal to honor those warranties—despite accepting the benefits of the sale—rendered the transactions inequitable. Although California courts do not always recognize a standalone cause of action for unjust enrichment, courts routinely interpret such claims as seeking restitution. Therefore, Plaintiff has alleged sufficient facts to support such relief.

b. Plaintiff's Federal Cause of Action

Plaintiff has also stated a claim under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 et seq., a federal statute designed to protect consumers by establishing minimum disclosure and performance standards for written warranties on consumer products. Here, Plaintiff alleges that Defendant provided a written warranty promising to repair or replace defective products, including motherboards, but failed to comply with that promise in multiple instances. Indeed, the company systematically denied valid warranty claims on the basis of unsubstantiated "physical damage," despite

the fact that Plaintiff used the products as intended and fully complied with warranty procedures. These denials constitute breaches of the written warranty within the meaning of the Act. Additionally, Plaintiff allege breaches of implied warranties, which are also actionable under the MMWA when tied to state law warranty violations—as they are here under both the California Commercial Code and the Song-Beverly Consumer Warranty Act.

Moreover, Plaintiff alleges that Defendant included unlawful and deceptive warranty language, such as conditioning warranty coverage on the presence of an undamaged product sticker, which the Federal Trade Commission has already flagged as a violation of federal law. Such conduct runs afoul of the MMWA's prohibition against tying warranty coverage to the use of specific branded services or components without an FTC waiver. *See* 15 U.S.C. § 2302(c). Plaintiff has adequately alleged monetary loss arising from these breaches, including out-of-pocket costs to replace defective products, wasted time and labor, and the loss of expected benefits under the warranty. Accordingly, Plaintiff's federal law claim is well-pleaded and supports entry of default judgment.

At bottom, Plaintiff's Complaint properly alleges the necessary elements for each cause of action. Again, because Defendant's failure to defend this action constitutes an admission as to the averments contained in the complaint, the Court must accept these allegations as true. Accordingly, because each of these claims is well-supported by factual allegations and legal authority, and because default has been entered against Defendant, Plaintiff has sufficiently stated claims upon which relief can be granted, and the second and third *Eitel* factors likewise favor entry of default judgment against Defendant.

3.  <u>Amount At Stake</u>

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *Cal. Sec. Cans.*, *supra*, 238 F.Supp.2d at 1176; *see also Eitel*, *supra*, 782 F.2d at 1471–72.  As explained below, Plaintiff seeks a total award of $48,165.19. Plaintiff reached this amount by calculating the sum of the total actual damages, statutory treble damages and civil penalties, and attorneys' fees and costs. This amount is conservative and reasonable in light of Defendant's misconduct. Accordingly, this factor favors granting default judgment.

4.  <u>Possibility of Dispute</u>

The fifth *Eitel* factor considers the possibility of dispute as to any material facts in the case. Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages. *TeleVideo Sys., Inc., supra,* 826 F.2d at 917–18. As established above, Plaintiff filed a well-pleaded complaint alleging the facts necessary to establish his claims, and the court clerk entered default against Defendant. Thus, no dispute has been raised regarding the material averments of the complaint, and the likelihood that any genuine issue may exist is, at best, remote. This factor therefore strongly favors the entry of default.

5.  <u>Possibility of Excusable Neglect</u>

The sixth *Eitel* factor considers the possibility that the default resulted from excusable neglect. Due process requires that all interested parties be given notice reasonably calculated to apprise them of the pendency of the action and be afforded opportunity to present their objections before a final judgment is rendered. *Mullane v.*

*Central Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950). In this case, Defendant was served with a pre-litigation Notice Letter by U.S. Mail, at the address of its agent as reflected on the Secretary of State's website, was served with the Summons and Complaint, and received notice of Plaintiff's Request for Entry of Default by mail as well. Nevertheless, Defendant consciously chose to ignore all correspondence and service. In light of these facts, the possibility of excusable neglect is nonexistent. Accordingly, the default has not resulted from excusable neglect, but rather from intentional conduct, and therefore the sixth *Eitel* factor favors granting a default judgment.

6.  <u>Policy Implications Favoring Decisions on the Merits</u>

Finally, the mere existence of Fed. R. Civ. P. 55(b) indicates that the seventh *Eitel* factor is not alone dispositive. *Cal. Sec. Cans*., *supra*, 238 F.Supp.2d at 1177. "Moreover, Defendant's failure to answer [Plaintiff's] Complaint makes a decision on the merits impractical, if not impossible. Under FRCP 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action." *Id*. This is precisely what occurred in the present case. Therefore, the seventh *Eitel* factor does not preclude the Court from entering default judgment against Defendant.

**C. Remedies**

Fed. R. Civ. P. 54(c) allows only the amount prayed for in the complaint to be awarded to the plaintiff in a default. Under Fed. R. Civ. P. 8(a)(3), the demand for relief must be specific. In addition, Plaintiff must "prove up" the amount of damages that it is claiming. In the instant motion, Plaintiff seeks a permanent injunction, **damages in an amount of $18,823.95**, **attorneys' fees in the amount of $28,785.00, and costs in the**

**amount of $556.24, for a total of $48,165.19**. These remedies do not differ from the relief prayed for in the complaint.

    1. <u>Damages</u>

Plaintiff has calculated his actual damages to amount to $6,274.65 which he may recover under California and common law. This sum reflects the cost of the replacement parts, the cost of the replacement software and the cost of the labor for repair of the two computer systems. Plaintiff is also entitled to statutory damages, including civil penalty up to two times the amount of actual damages, in the amount of $12,549.30 under the Song-Beverly Consumer Warranty Act, which allows for civil penalties up to double the amount of the consumer's actual damages. Thus, the sum of sought actual and statutory damages equals $18,823.95.

    2. <u>Injunctive Relief is Appropriate</u>

Plaintiff is also entitled to permanent injunctive relief. The CLRA and UCL are law enforcement tools designed to protect consumers and deter wrongdoing. *Lavie v. Procter & Gamble Co*., 105 Cal.App.4th 496, 503 (2003). Accordingly, each of these statutes allows the Court to "make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition." Bus. & Prof. Code § 17203; Civ. Code § 1780(a)(2); *see also generally Thompson v. 10,000 RV Sales, Inc*., 130 Cal.App.4th 950, 960 (2005).

In this manner, the "purpose of the injunctive relief provision of the CLRA [and UCL] is not to resolve a private dispute but to remedy a public wrong. . . . In other words,

the plaintiff in a CLRA damages action is playing the role of a bona fide private attorney general." *Broughton v. Cigna Healthplans*, 21 Cal.4th 1066, 1080 (1999). This distinguishes the injunctive relief available under the CLRA and UCL from private injunctive relief between the parties, as Plaintiff may use the CLRA and UCL to obtain "public injunctive relief—i.e., relief that "by and large" benefits the general public." *McGill v. Citibank, N.A.*, 2 Cal.5th 945, 955 (2017).

In this instance, Plaintiff requests that the Court issue a permanent injunction against Defendant and its officers, agents, servants, employees, and attorneys, and all those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, that includes the following material terms:

1) A prohibition against misrepresenting the terms, conditions, or scope of any express or implied warranties, including but not limited to falsely asserting "physical damage" as a basis for denying claims without adequate substantiation or failing to honor valid warranty claims submitted in compliance with the product's terms;

2) A prohibition against including in any consumer warranty or product marketing material any language that implies consumers must use specific branded parts, services, or refrain from independent repair in order to retain warranty coverage.

The proposed injunctive relief is necessary and appropriate because the claims otherwise warrant an injunction, and Defendant, though well aware of serious claims

brought against it, has chosen to ignore this lawsuit. Failure to grant the injunction would needlessly expose the Plaintiff to the risk of continuing irreparable harm.

    3.  <u>Costs and Attorneys' Fees</u>

The CLRA requires an award of recovery of attorneys' fees and costs to a prevailing plaintiff. Cal. Civ. Code § 1780(e). The California Supreme Court has endorsed the "lodestar" method based on "careful compilation of the time spent and reasonable hourly compensation of each attorney. . . involved in the presentation of the case." *Serrano v. Priest*, 20 Cal.3d 25, 48 (1977). The amount of attorney's fees or lodestar is:

> the basic fee for comparable legal services in the community; it may be adjusted by the court based on factors including ... (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award. [Citation.] The purpose of such adjustment is to fix a fee at the fair market value for the particular action. In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services.

*Ketchum v. Moses*, 24 Cal.4th 1122, 1131-32 (2001).

"In cases involving enforcement of constitutional rights, but little or no damages, [ ] fee enhancements may make such cases economically feasible to competent private attorneys." *Id*., at 1133. Indeed, the CLRA provision for recovery of attorney fees allows consumers to pursue remedies in cases where the compensatory damages are relatively modest; to limit the fee award to an amount less than that reasonably incurred in prosecuting such a case, would impede the legislative purpose underlying the CLRA. *Graciano v. Robinson Ford Sales, Inc.,* 50 Cal.Rptr.3d 273 (2006).

Plaintiffs' counsel took this case on contingency, assuming the full financial risk of litigation with no assurance of compensation. Counsel has devoted substantial time and resources to investigating the facts, preparing detailed pleadings, complying with pre-litigation notice requirements, and seeking relief for both Plaintiff and similarly situated consumers. Given the modest individual damages at issue and the complexity of litigating against a multinational corporation such as Gigabyte, this case would not have been economically viable but for the contingency arrangement and counsel's willingness to advance all costs.

Plaintiff therefore seeks an award of attorneys' fees calculated under the lodestar method, based on the reasonable hourly rates for attorneys in the Central District of California and the actual hours incurred prosecuting this action. In light of the contingent nature of the representation, the substantial public benefit achieved, and the skill and effort required to pursue this matter in the absence of any cooperation from Defendant, Plaintiff further requests that the Court apply a modest multiplier to the lodestar to fairly compensate counsel for the risk undertaken and to promote enforcement of consumer protection laws. An award of reasonable attorneys' fees and costs is appropriate under both the CLRA and California Code of Civil Procedure § 1021.5, which permits recovery where, as here, a plaintiff has conferred a significant benefit on the public.

Although, Local Rules establish a formulaic calculation of attorneys' fees, fees in excess of Rule 55-3's schedule should be granted. In total, Plaintiff's counsel accumulated $28,785.00 in lodestar on work including interviewing potential witnesses and class members, preparing the Notice Letter and subsequent detailed Complaint, and filing the

instant Motion. Mouzari Decl. ¶¶ 31-35. Plaintiff has also incurred $556.24 in costs for this case. Mouzari Decl. ¶36. Accordingly, the Court should grant Plaintiff's request for an award of attorneys' fees and costs in the amount of $29,341.24. Mouzari Decl. ¶37.

## V.    **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Default Judgment should be granted and Plaintiff and his counsel should be awarded damages, attorney fees, costs, and permanent injunctive relief as follows: damages in an amount of $18,823.95, attorneys' fees in the amount of $28,785.00, and costs in the amount of $556.24, for a total of $48,165.19.


DATED: July 25, 2025              **BEVERLY HILLS TRIAL ATTORNEYS, P.C.**


                                  */s/ Azar Mouzari*
                                  Azar Mouzari, Esq.
                                  Nilofar Nouri, Esq.



### **L.R. 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 4,811 words which complies with the word limit of L.R. 11-6.1.


DATED: July 25, 2025              **BEVERLY HILLS TRIAL ATTORNEYS, P.C.**


                                  */s/ Azar Mouzari*
                                  Azar Mouzari, Esq.
                                  Nilofar Nouri, Esq.

*PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT*

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the United States District Court Central District of California by using the CM/ECF system on July 25, 2025. I further certify that all participants in the case appear to have been registered CM/ECF users and that service should therefore be accomplished by the CM/ECF system via electronic mail to all parties that have appeared.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 25, 2025 in Los Angeles, California.

/s/ Nilofar Nouri

Nilofar Nouri

*PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT*

## PROOF OF SERVICE

I declare that I am a resident of and/or employed in the County of Los Angeles, California. I am over the age of 18 years and not a named party to the entitled case. My business address is 9350 Wilshire Blvd., Suite 203, Beverly Hills, California.

On July 25, 2025, I confirm that the completion of service of the foregoing documents described as:

(1) **PLAINTIFF MICHAEL VAIL'S NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

(2) **[PROPOSED] ORDER GRANTING PLAINTIFF MICHAEL VAIL'S MOTION FOR DEFAULT JUDGMENT**

(3) **DECLARATION OF MICHAEL VAIL IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**

(4) **DECLARATION OF AZAR MOUZARI IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**

**X VIA U.S. MAIL** by enclosing the documents in a sealed envelope or package to the address below and placed the envelope(s) for collection and mailing, following our ordinary business practices. I am readily familiar with this business' practice for collecting and processing correspondence for mailing. On the same day the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

On the following parties/counsel of record:

G.B.T. Inc.
Agent: Eric C. Lu
17358 Railroad Street
City of Industry, CA 91748

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 25, 2025, in Los Angeles, California.

*/s/ Nilofar Nouri*

---

26

*PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT*